IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPI
ABERDEEN DIVISION

| | |
|---|---|
| TITAN EXTERIORS, INC. d/b/a TITANROOF | PLAINTIFF |
| V. | Civil No. 1:17-cv-178-GHD-DAS |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | DEFENDANT |

**MEMORANDUM OPINION**

This court has before it Plaintiff Titan Exteriors' motion for partial judgment on the pleadings [10]. Having considered the matter the court finds that the motion should be granted.

**Factual and Procedural Background**

Nonparty Columbus Business Center ("CBC") owned a shopping center that it insured through a policy (the "Policy") written by Defendant Certain Underwriters at Lloyd's, London ("Underwriters"). Compl. [Doc. No. 1] ¶ 5. This Policy provided that in the event of a covered loss, Underwriters would "pay the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form . . . ." Policy, [Doc. No. 1-1] at pg. 31. The Policy provided that "the value of Covered Property" would be determined as "[at] actual cash value as of the time of loss or damage. . ." Policy, at pg. 32. The Policy did not define "actual cash value."

In April 2014, while CBC's policy with Underwriters was in effect, the shopping center suffered hail and wind damage, purportedly resulting in $5,000,000 in damages to the property. Compl. ¶¶ 11, 12. In March 2016, CBC reported the loss to Underwriters. *Id.* ¶ 14; Def.'s Ans. [Doc. No. 6] ¶ 14. CBC then contracted with Plaintiff Titan Exteriors to repair the damage to the property. Compl. ¶ 13; Def.'s Ans. ¶ 13.

1

In March 2017, Underwriters notified CBC that they would issue an actual cash value payment for the damaged property in the amount of $1,217,545.60. Compl. ¶ 16; Def.'s Ans. ¶ 16. In order to reach that figure, Underwriters used the "replacement cost value less depreciation" methodology to compute the actual cash value. Compl. ¶¶ 26, 27; Def.'s Ans. ¶¶ 26, 27. Underwriters first estimated the replacement cost value which is the cost to repair or replace the damage with new materials, as $3,980,142.81. Compl. ¶ 29; Def.'s Ans. ¶ 29. Underwriters then subtracted depreciation, with it calculated as $2,662,597.21. Compl. ¶ 30; Def.'s Ans. ¶ 30. Finally, it subtracted the applicable deductible of $100,000 to reach the actual cash figure of $1,217,545.60. Compl. ¶ 31; Def.'s Ans. ¶ 31. Underwriters informed Titan Exteriors that of the $2,662,597.21 depreciation, $1,054,023.63 was for depreciation of labor. Compl. ¶ 38-39; Def.'s Ans. ¶ 38-39.

In June 2017, CBC assigned its insurance claim to the actual cash value payment to Titan Exteriors, despite a non-assignment provision being in CBC's insurance policy. Compl. ¶ 18. Underwriters refuses to release the certain insurance proceeds to Titan Exteriors, because it believes there has been no valid assignment under the policy, and so Titan Exteriors filed the present suit. Compl. ¶ 23.

Titan Exteriors has moved for a judgment on the pleadings [Doc. No. 10]. In its motion, Titan Exteriors argues that CBC's assignment to Titan Exteriors was valid. It then argues that "actual cash value," as it is defined in the policy, is ambiguous in that reasonable minds could differ as to whether it encompasses the depreciation of labor costs or materials only. It argues that this ambiguity should be resolved in favor of the insured, in this case Titan Exteriors, such that the insurer may not depreciate labor when calculating the actual cash value under the Policy. Therefore, Titan Exteriors asks this Court to enter a partial judgment in its favor in the amount of

$1,054,023.63, the amount Underwriters deducted for labor depreciation. Underwriters has responded, and this matter is now ripe for review.

### 12(c) Motion for Judgment on the Pleadings Standard

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. See *Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509–10 (1990)).

### Analysis

Because this case is before the Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, state substantive law applies. Under Mississippi law, the interpretation of an insurance policy is a question of law, not one of fact. *Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss.1998). When interpreting an insurance policy under Mississippi law, the Court must "look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). "[When] the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Noxubee Cty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004).

A term is ambiguous if it "can be interpreted to have two or more reasonable meanings." *J & W Foods Corp.*, 723 So. 2d at 552 (citing *Ins. Co. of N. Am. v. Deposit Guar. Nat. Bank*, 258 So. 2d 798, 800 (Miss. 1972)). "Under Mississippi law, ambiguous and unclear policy language must be resolved in favor of the non-drafting party—the insured." *Noxubee Cty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004) (citing *Harrison v. Allstate Ins. Co.*, 662 So.2d 1092, 1094 (Miss.1995)).

There are no disputes about the material facts underlying this motion. The parties agree that CBC made an attempted assignment of its insurance claim to Titan Exteriors in June 2017, after CBC reported the loss to Underwriters. The parties also agree that Underwriters deducted $1,054,023.63 for depreciation of labor when determining the actual cash value of the damaged property. The only two questions before the Court are questions of law – whether the Policy prohibited CBC's assignment to Titan Exteriors and whether the Policy allowed Underwriters to depreciate labor when computing actual cash value.

1. **Was CBC's assignment to Titan Exteriors valid?**

At the outset, the Court must determine whether CBC's assignment of its insurance claim to Titan Exteriors was valid, because if it is not, Titan Exteriors is not entitled to the proceeds as a result of the assignment. The insurance policy between CBC and Underwriters contained an anti-assignment provision that stated: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." Policy, [1-1] at pg. 17. Titan Exteriors argues that under Mississippi law, anti-assignment provisions such as the one contained in the Policy apply only to pre-loss assignments. Underwriters contend that such provisions bar both pre- and post-lost assignments.

Under Mississippi law, contractual rights, generally, may be assigned. *See Merchants & Farmers Bank of Meridian v. McClendon*, 220 So. 2d 815, 821 (Miss. 1969). Assignments may be

4

prohibited, however, by the terms of the contract creating the right. *Id.* Mississippi law "draw[]s a distinction between the assignment of a contract and the assignment of money that may be due or may become due under a contract." *Ayers v. State Farm Fire & Cas. Co.*, No..1:06-CV-1261-LTS, 2007 WL 1378401, at *3 (S.D. Miss. May 7, 2007) (citing *Merchants*, 220 So.2d at 821.) Thus, proceeds may be assigned "even where the underlying contract expressly prohibits assigning of the contract itself." *Id.*

Underwriters point to *Merchants* in support of its contention that Mississippi law extends anti-assignment provisions to post-loss assignments. *Merchants* is distinguishable from the case at hand, however. *Merchants* involved a construction contract, that specifically prohibited the assignment of "any moneys due or to become due . . . .". 220 So.2d at 817. Thus, there was no pre/post-loss distinction to be made with regard to when a claim arose and became due. The Policy in the case *sub judice* does not have this kind of specific prohibition.

Numerous authorities identify the occurrence of a loss "as the key point in time for conversion of rights under an insurance policy to a claim for proceeds for assignment purposes." *Edgewood Manor Apartment Homes LLC v. RSUI Indem. Co.*, 782 F. Supp. 2d 716, 736 (E.D. Wis. 2011) (applying Mississippi law), *aff'd,* 733 F.3d 761 (7th Cir. 2013) As a general rule, post-lost assignments are not prohibited by anti-assignment provisions because "[a]fter a loss occurs, the indemnity policy is no longer an executory contract of insurance. It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property." 17 WILLISTON ON CONTRACTS § 49:126 (4th ed.). This is the rule in a majority of jurisdictions. *See id.* at n.1,2 (collecting cases).

The rationale for this rule is two-fold. First, treating post-loss assignments as vested claims does not contradict the purpose of anti-assignment clauses. Such clauses exist to "prevent an

increase of risk for the insurer," by forcing to the insurer to insure against risks it did not contemplate when it entered into the policy. *Edgewood*, 782 F.Supp. 2d at 738; 3 COUCH ON INS. § 35:4. Once a loss occurs, that justification goes away because "[w]hen the loss occurs before the transfer . . . the characteristics of the [assignee] are of little importance: regardless of any transfer the insurer still covers only the risk it evaluated when it wrote the policy." *N. Ins. Co. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir. 1992). Second, once the loss has occurred:

> the insured is entitled to recovery under the policy; that right is a chose in action; a chose in action is a form of personal property; the anti-assignment provision amounts to a restraint upon the alienation of this property right; and, a restraint upon the alienation of property is in opposition to public policy.

*Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 682–83 (Ky. 2012).

The Court is unable to find any Mississippi appellate court case addressing the enforceability of anti-assignment provision in an insurance contract to a post-loss assignment. The sole Fifth Circuit opinion on the issue addressed only Texas law. *See Insurance Co. of Penn. v. Hutter*, 34 F. App'x 963 (5th Cir. 2002). Two other district courts have predicted that the Mississippi Supreme Court would hold anti-assignment clauses as unenforceable to post-loss assignments. *See S. Ins. Co. v. Affiliated FM Ins. Co.*, No. 2:13-CV-263-KS, 2015 WL 1636711, at *7 (S.D. Miss. Apr. 13, 2015), *aff'd*, 830 F.3d 337 (5th Cir. 2016)[1] ("Based on the preceding authorities, the Court predicts that the Assumption Agreement, executed more than one (1) year after the date of loss, would not be deemed unenforceable pursuant to the Southern Policy's anti-transfer provision under Mississippi law");. *Edgewood Manor*, 782 F. Supp. 2d at 737 ("[T]his court believes the Supreme Court of Mississippi would find the plaintiffs' [post-loss] assignment more akin to an assignment of proceeds than to assignment of rights under the insurance policy").

---

[1] In affirming the district court, the Fifth Circuit did not address the question of enforceability of the anti-assignment provision because it found the appellant had waived the issue on appeal. 830 F.3d at 347.

In light of the Mississippi Supreme Court's statement in *Merchants* that "[t]he general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable," 220 So. 2d at 821, this Court sees no reason to disagree with those district courts, and predicts that the anti-assignment provision here would not operate to prevent post-loss assignments under Mississippi law. Accordingly, the Court finds that CBC's post-loss assignment of its claim to Titan Exteriors was valid.

## 2. Does "depreciation" include "depreciation for labor"?

Next, the Court must determine the meaning of "depreciation" within the context of "actual cash value." Titan Exteriors argues that, within the meaning of the Policy, "actual cash value," and by extension, "depreciation" are ambiguous terms that could be interpreted either to include or exclude depreciation for labor costs. According to Titan Exteriors, this ambiguity should be resolved against Underwriters, the insurer, entitling it to the amount Underwriters deducted for depreciation of labor. Underwriters claims that neither term is ambiguous and that "actual cash value" necessarily means labor will also be depreciated in calculating that figure.

Appling the Mississippi law of contract interpretation to this case, the Court must first determine whether "actual cash value" is ambiguous by being susceptible to more than one reasonable meaning. If so, "then the intention of the parties to the insurance contract should be determined based upon what a reasonable person placed in the insured's position would have understood the terms to mean." *J & W Foods Corp.*, 723 So. 2d at 552. Although undefined in the Policy, the parties do not actually disagree, at least in the most abstract level, about the meaning of "actual cash value." Both parties agree that "actual cash value" means "replacement cost value less depreciation." Of course, the Policy defines neither "replacement cost value" nor "depreciation," and it is the meaning of "depreciation" upon which this issue hinges.

7

Underwriters fails to provide a textual analysis of the Policy to support its argument that "actual cash value" unambiguously includes "depreciation of labor." Underwriters points to the Policy requirements that it must determine the "value" of the covered property, and argues that "value" means the value of the entire property, which includes of materials and labor. Thus, when Underwriters depreciates the value of the Covered Property, it must necessarily depreciate labor. But the Policy does nothing to define what "value" is supposed to mean beyond "actual cash value," and so that reasoning is circular.

Several courts, although none in Mississippi, have faced the same question as this Court. For example, state courts in Oklahoma, Florida, and Nebraska, as well as the Tenth Circuit, have all found that the definition of "actual cash value" permits depreciation for labor. *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1021 (Ok. 2002); *Goff v. State Farm Florida Ins. Co.*, 999 So. 2d 684, 689 (Fla. Dist. Ct. App. 2008); *Henn v. Am. Family Mut. Ins. Co.*, 295 Neb. 859, 874, 894 N.W.2d 179, 189 (2017); *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 539 (10th Cir. 2017). This is because the value of a given item is the product of both materials and labor, and if the value of the whole product diminishes, then value of the labor must diminish as well. *See Graves*, 686 F. App'x at 539.

Other courts have found differently. For example, the Supreme Court of Arkansas and a federal court in Alabama have held "actual cash value" does not unambiguously allow for depreciation of labor. *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 678-79 (Ark. 2013); *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1311-12 (S.D. Ala. 2017). This is because labor is not subject to physical deterioration, and so "actual cash value" could reasonably be interpreted to mean that only physical materials would be depreciated. *Arnold*, 268 F. Supp. 3d at 1312.

Finally, a federal court in Kentucky has ruled that depreciation can be understood to include depreciation for labor when the labor merges into the finished product and increases its market value, but labor may not be depreciated when it does not increase the market value of the product. *Brown v. Travelers Cas. Ins. Co. of Am.*, No. 15-50-ART, 2016 WL 1644342, at *4 (E.D. Ky. Apr. 25, 2016). The court further held that for many items "such as walls, the floor, and the ceilings," it is not clear whether the labor involved is the type that depreciates or not. *Id.*

All of those interpretations are reasonable. On the one hand, if depreciation never included labor, the value of an item would never depreciate past the cost of its components, such that – to borrow an example from *Brown* court – a $5,000 piano made of $500 of materials would never depreciate past $4,500 even if physically deteriorated to the point of uselessness. On the other hand, depreciation is often understood to represent a decline in worth from physical deterioration or "because of use, wear, obsolescence, or age." *Depreciation*, BLACK'S LAW DICTIONARY (10th ed. 2014). Labor does not suffer use, wear, or obsolescence. It does not physically deteriorate.

The Court need not decide which of these interpretations is correct. It needs only find that each is reasonable, and the Court so finds that "actual cash value" when defined as "replacement cost value less depreciation" is subject to more than one reasonable interpretation. Finding that the term "depreciation," without further definition, is ambiguous has some support in Mississippi law. In *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387 (Miss. 1978), the Mississippi Supreme Court was tasked with analyzing an auto insurance policy that included the following provision:

> Limit of Liability; Settlement Options; No Abandonment: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, *with deduction for depreciation*, or (3) the applicable limit of liability stated in the declarations.

9

*Id.* at 389 (emphasis added). The Mississippi Supreme Court noted that "the language in the policy is ambiguous and does not specifically prohibit or allow depreciation on the cost of labor." *Id.* at 390.

Because the Court finds that "actual cash value" is ambiguous, it must resolve the ambiguity in favor of the insured, and against the insurer. *Noxubee Cty. Sch. Dist.* 883 So. 2d at 1165. Doing so, the Court must find that "actual cash value," which in this policy is understood to mean "replacement cost value less depreciation", does not allow the insurer to depreciate labor to determine the "actual cash value." Underwriters admits that $1,054,023.63 was deducted as depreciation of labor, despite the policy prohibiting such deduction. Titan Exteriors, is therefore, entitled to that amount, as a matter of law.

## Conclusion

The Court finds that the Policy did not prohibit the assignment from CBC to Titan Exteriors. The Court further finds that the meaning "actual cash value" in the Policy is ambiguous. The Court resolves this ambiguity against the insurer, Underwriters, to find that the Policy does not allow Underwriters to depreciate labor when calculating the "actual cash value" amount to be paid under the policy. Underwriters admits in its pleadings that it deducted $1,054,023.63 as depreciation of labor when determining the amount it would pay out. Thus, there is no set of facts under which Underwriters could show that it was entitled to deduct depreciation of labor, or that

it did not make such a deduction. Accordingly, Titan Exteriors' partial motion for judgment on the pleadings should be granted.

An order in accordance with this opinion shall issue this day.

This, the 26 day of February, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE

11